## Augustus Richey's Appeal.

When a mortgage is entered of record simultaneously with judgments against the mortgagor, the lien of the mortgage is not anterior to the liens of the judgments; and such mortgage is not "prior to all other liens upon the property except other mortgages, ground rents, and purchase money due the commonwealth," and therefore the lien of such mortgage is devested by the sale of the land covered thereby, under the act of February 16, 1876, in reference to the sale of assigned encumbered real estate.

A mortgage executed by the owner of land, to a trustee to secure a bond in a certain sum conditioned for the payment of a specified annuity to the mortgagor's wife during her life, is not an exception to the above rule in reference to the devestiture of the lien.

When the lien of such a mortgage is devested by a sale of the mortgaged land, under said act of 1876, it is proper to award, out of the proceeds of such sale, the penal sum of the bond to the mortgagee in trust to insure the payment of the annuity—to be invested, and the amount thereof remaining after the annuitant's death to be for the use of the creditors of the mortgagor assignor not paid in the original distribution.

One of the judgments entered simultaneously with said mortgage was in favor of the mortgagee trustee against the mortgagor. The purchaser of the mortgaged premises, at the sale thereof under the mortgagor's general assignment, having paid off said judgment, claimed to be subrogated to the rights of the judgment plaintiff upon such judgment, in the distribution of the proceeds of the sale.—*Held,* that the evidence failed to show that such payer of the judgment had received or been entitled to an assignment thereof, or had been compelled to pay the same; and hence, *held,* that his voluntary payment of such judgment entitled him to no right of subrogation, but acted as a satisfaction thereof as against junior lienors.

On the sale of assigned encumbered real estate, under the act of Febru-

rary 16, 1876, liens entitled to participate in the distribution of the fund realized, are entitled to interest up to the date of confirmation of sale, but not beyond that date.

(Argued April 26, 1888. Decided May 14, 1888.)

January Term, 1888, No. 37, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ. Appeal from a decree of the Common Pleas of Cumberland County distributing the fund in the hands of the assignees of Samuel W. Bratton, under a voluntary assignment for the benefit of creditors. Affirmed.

The appeal was taken by Augustus Richey, the appellees being Matthew B. Boyd, Thomas C. Scouller, and Margaret S. Bratton.

The respective positions of these parties in reference to the fund, together with the facts of the case and the questions presented, appear from the following opinion of the court below, SADLER, P. J., upon exceptions to the auditor's report:

Samuel W. Bratton made a deed of voluntary assignment for the benefit of creditors on the — day of January, 1885.

His assignees procured an order from the court of common pleas, under the provisions of the act of February 16, 1876, to sell the real estate of the assignor, which consisted of 3 tracts, on the 21st day of the same month, January, 1885.

Upon a return of the sale of two of the parcels, March 12 following, it was confirmed. The amount realized from them was $4,340.43. The remaining tract was disposed of under an alias order, for the sum of $7,485.76, and confirmation of same had October 12, 1885. The liens against the assigned real estate consisted of a number of judgments in the common pleas, and one mortgage, the latter being confined to the land last sold. The mortgage was executed and entered on the 24th day of November, 1879, and on the same date judgments were entered to Nos. 56, 57, and 58 of January term, 1880. Several judgments were also recovered against Bratton which remained unpaid at the time of his assignment.

Upon one of these an execution had been issued, and the amount due thereon paid by Augustus Richey to the sheriff; and he claims that he should have appropriated from the fund for distribution the debt, interest, and costs which are owing

to him by reason of such payment. His right to this was denied by the defendant and by junior lien creditors—the former alleging that the judgment was paid by Richey upon the agreement that he would execute to Richey one in a larger amount, which he did, and which was subsequently entered against him, while the subsequent lien creditors insist in addition, that, as to them, it was extinguished by the payment of Richey to the sheriff. This was one of the subjects of contention before the auditor, and his determination is complained of in an exception before us. The auditor's conclusions that the mortgage was not devested by the judicial sale and that the principal sum should not be paid out of the fund realized from the sale of the land, and that interest should be computed to October 19, 1886, a period long after the dates on which the sales of the real estate were confirmed, have also been excepted to.

The mortgage was given to secure a bond in the sum of $2,500, "conditioned for the payment of $50 on the first day of October, 1880, and the further sum of $75 on the first day of April, 1881, and a like sum of $75 on the first day of October, 1881, and semi-annually thereafter, to pay said sum of $75 on the first days of April and October each year during the life of the said Margaret G. Bratton.".

The bond was with a warrant of attorney to confess judgment thereon, which was done on the 25th day of October, 1883, and entered to No. 203 of November term, 1883.

Margaret G. Bratton is the wife of the assignor and in full life.

The auditor held that as the period during which Mrs. Bratton will live is uncertain, it was therefore impossible to compute the amount which will become payable on the mortgage; and for this reason its lien was not devested by the sale made by assignees, of the land which is encumbered. The act of assembly providing for the sale of assigned real estate, encumbered by liens, provides that "such sales, after they shall have been confirmed by the court, shall discharge all liens against the same, excepting that when the lien of a mortgage upon real estate is or shall be prior to all other liens upon the same property, except other mortgages, ground rents, and purchase money due the commonwealth, the lien of such mortgages shall not be destroyed or in any way affected by any sale made by virtue of or under the authority of the provisions of this act."

The rule which prevailed in the early history of our juris-
prudence was to the effect that all mortgage as well as judg-
ment liens were devested by a judicial sale. The act of April 6,
1830, changed the law on this subject. It provides that when
the lien of a mortgage is prior to all other liens upon the same
property, except other mortgages, ground rents, and purchase
money due the commonwealth, the lien of such mortgage shall
not be destroyed or in any way affected by any sale made by
virtue of any writ of *venditioni exponas.* It also makes a sim-
ilar provision when sales are made on writs of *levari facias.*
This was extended by act of April 16, 1845, to sales made
under all writs of execution.

The determinations of the supreme court in construing and
applying these and kindred acts furnish the principles which
must control in passing upon the aforesaid act, relating to
sales of encumbered real estate, by assignees for the benefit of
creditors, under deeds of voluntary assignment.

The mortgage in the present case was not "prior to all other
liens except other mortgages, ground rents, and purchase money
due the commonwealth." Its entry is simultaneous with three
judgments in the common pleas. Its lien was not anterior to
theirs. It would, I apprehend, be therefore at once conceded
that the mortgage would be devested under the terms of the
act, if it secured the payment of a sum certain, at a fixed
period. The sole ground on which the auditor bases his conclu-
sion, that it was not devested by the sale, was the impossibility
of determining how much would become due upon it during
the life of Mrs. Bratton. The cases which he had cited in
support of the view taken by him are not analogous to the one
which was before him.

In Knaub v. Esseck, 2 Watts, 282, the mortgage was prior
to all other liens.

Cowden's Estate, 1 Pa. St. 267, was when real estate was
devised subject to payment of a legacy.

Mohler's Appeal, 5 Pa. 420, 47 Am. Dec. 413, is where land
was devised to a son charged with a sum of money upon which
interest was to be paid annually to a widow for life, while
in Dewalt's Appeal, 20 Pa. 236, the conveyance of the land
charged the title with the lien which was held not to be devested
by the judicial sale.

There is, I am well satisfied, no case reported, of the de-
cisions of the supreme court, where a mortgage entered on the

same day with judgments was held not to be devested. None such are referred to by the auditor. They are all cases where the mortgage was a prior encumbrance, or where the land was subject to a charge imposed upon it by the will devising, or the deed conveying, or where the interest which the widow had in the land of a deceased husband was secured to her. And it may be here remarked, that in examining the cases, when the securities (which evidence the dower interest of a widow) have not been devested by a sale of the land, it is proper to keep in mind that she has an interest in the land under the intestate laws, independent of any mortgage or other lien which may have been executed to evidence its value and secure payment. The mortgage in the present case was not prior to all other liens, and hence is not devested under a literal construction of the act of 1876, and in accordance with the provisions of which the land was sold. Nor is there authority for the position that it was incapable of devestiture because impossible of computation. It was therefore devested and is entitled to be set apart out of the proceeds realized by the assignees from the sale of the land. It is a fund which must be held to insure the payment to Mrs. Bratton of semi-annual payments of $75 during her natural life; and upon her decease what remains of it will be for the use of the creditors of the assignor who may not be paid in the present distribution. Their rights can be protected by a judicious investment of it.

The right of Richey to participate in the fund for distribution by reason of his payment of judgment entered in favor of Thomas C. Scouller, trustee to No. 58, of January term, 1880, depends upon whether he purchased it from the plaintiff, and received or was entitled to an assignment of it, or if not entitled on this ground, then upon whether he paid it under such circumstances as entitles him in equity to be subrogated to the rights of the said plaintiff.

The testimony taken before the auditor should not have justified the finding, that the judgment should be treated as having been assigned to him by Mr. Scouller. Indeed, it is overwhelming to the effect that the latter desired to have the property of the defendant sold upon the execution which had been issued on the judgment and that he refused to make any assignment of it, although one had been prepared by Richey's attorney and request made of him, the plaintiff, to do so. These facts appear by the testimony of Messrs. Brandt, Claudy,

Bratton, in addition to that of the plaintiff and others.    Mr. Miller states that "Bratton, the defendant, requested Richey to pay the execution and that he (Bratton) would have it assigned," and this is no doubt the fact; but it does not avail Richey, when his right to the appropriation sought for is contested by junior lien creditors.

It was insisted on the argument of the case that the sheriff's return of the execution which is as follows: "The debt, interest, and cost of the judgment having been paid by A. Richey, this judgment now stands for his use," is conclusive in favor of the claims made by Richey; that it cannot be questioned in this proceeding and the auditor had no right to inquire into the validity of the matter.    But the right of the auditor to inquire into whether the judgment had been paid or not, and its lien therefore discharged, cannot be questioned.

The return of the sheriff is prima facie and not controlling on a collateral issue to try the rights of creditors to proceeds of sale.    Lowry v. Coulter, 9 Pa. 349–353.    Troubat & H. Pr. §§ 1071, 1072, 1073, and notes.

Besides, the statement in the return that the judgment was paid by Richey and that the judgment stands for his use, in addition to being not in accordance with the facts, as appeared by the testimony before the auditor, is mere surplusage and will be treated as a nullity.    The plaintiff receipted to the sheriff in these words: "Received March 4, 1885, of George B. Eyster, sheriff, the sum of $512.72 in full of the above judgment debt, interest, and plaintiff's costs;" and this also corroborates his statement that no assignment of the judgment was made or contemplated.

But the auditor seems to place the right of Richey to the claim made by him on the ground that he was entitled in equity to be subrogated to the rights of Thomas C. Scouller, the plaintiff.

"The familiar doctrine of subrogation is that when one has been compelled to pay a debt which ought to have been paid by another, he is entitled to cession of all the remedies which the creditor possessed against that other." McCormick v. Irwin, 35 Pa. 117. "It is the usual remedy between principal and surety and between sureties themselves." Croft v. Moore, 9 Watts, 452.

The doctrine announced by Chancellor Kent, that the benefit of substitution is only to be applied in a clear case appear-

ing from the proceedings in the cause, is approved in Goswiler's Estate, 3 Penr. & W. 203.

It will not be enforced at the expense of the legal right of another. Lloyd v. Galbraith, 32 Pa. 103.

"It is only in cases where a person paying the debt stands in the relation of a surety, or is compelled to pay in order to protect his own interests or in virtue of legal process, that equity substitutes him in the place of the plaintiff."

Richey bore no relation to Thomas Scouller or the defendant. He had no connection with the judgment. He could not be affected by it. While Bratton may have requested him to pay the execution upon it and he was induced to do so by the latter, it gave him no right in equity to be substituted in place of the plaintiff to the prejudice of the subsequent lien creditors.

The case of Fleming v. Beaver, 2 Rawle, 128, 19 Am. Dec. 629, referred to by the auditor, was where two persons were cosureties for a third and one of the sureties having paid the whole debt, it was held that his right as surety to be substituted was indisputable; that he succeeded by operation of law to the rights of the creditor.

That interest ceases upon the confirmation of a sale of land made by an assignee for the benefit of creditors, when the sale is made under an order of the court of common pleas under the provisions of the act of February 11, 1876, is well settled in Pennsylvania. Burkholder's Appeal, 94 Pa. 522.

Had the estate been solvent, which would have been the case had the mortgage not been devested by the sale, the allowance of interest until the date fixed by the auditor could not have been complained of and the judgment paid by Richey might have properly been allowed out of the fund for distribution. In that case only the defendant would have been affected, and it would have been compelling him to discharge his indebtedness; but the contention is not alone between the creditors and defendant, but between other lien creditors, as well, and they have a right to insist upon what the law gives them.

On the argument of the case, there was considerable discussion as to the judgment in favor of Richey for $1,000, entered to No. 181, January term, 1885; but there was nothing brought to our attention which would have justified the auditor in treating it in any other manner than as a valid lien, binding upon the defendant for the full amount.

The sales confirmed March 12, 1885, were more than sufficient to discharge the first three judgments entitled to participate in distribution (making a liberal allowance for the proportion of the expenses of the trust which would be properly chargeable on the proceeds), and on these, interest should be computed to that date, and on the mortgage, whose lien was confined to the tract last sold, as well as upon the other judgments, interest will be computed until October 8, 1885, the date of the confirmation of its sale.

Slightly more was paid by the assignees on judgments Nos. 150 and 160, August term, 1883, than they were entitled to, but no exception was taken and we will not interfere. This fact makes it impossible to work out a distribution which will entirely accord with the principle laid down as there is no way of bringing these excessive payments into the fund, but the amount is so small that it makes a difference of no importance.

(Here a scheme of distribution was stated.)

Any portion of the fund which is held to secure the annual payments which may remain unexpended at Margaret G. Bratton's decease will be distributable to the balance due on the above judgment entered to No. 181, January term, 1885; and if more remains than will be required for that purpose, then to the judgment entered to No 58, January term, 1880, and which was paid by A. Richey at request of S. W. Bratton, as found by the auditor; and should any further amount remain, then to the other creditors *pro rata.*

The assignees will be allowed as a credit on the amount distributed to the mortgage any sums they may have paid on account of the annuity to Mrs. Bratton.

And now September 12, 1887, the exceptions to the auditor's report are sustained, to the extent above indicated; and as modified, it is confirmed, and Robert McCachran and W. G. Stewart, assignees, are hereby ordered to pay over the balance in their hands to those creditors of S. W. Bratton which appear to be entitled by the above scheme of distribution.

The assignments of error specified the action of the court: (1) In decreeing that the sale of the tract of land to Matthew B. Boyd by the assignees devested the lien of the mortgage given by Bratton to Scouller in trust for Margaret G. Bratton; (2) in decreeing that.$2,500 of the fund in the hands of the

assignees for distribution should be paid to Thomas C.
Scouller; (3) in not decreeing that the mortgage given by
Bratton to Scouller in trust for Margaret G. Bratton re-
mained a lien on the lands sold and confirmed to Matthew B.
Boyd; (4) in not decreeing that the two judgments held by
the appellant, Augustus Richey, against Samuel W. Bratton
the assignor, to No. 181, January term, 1885, and No. 213,
August term, 1880, which were liens at the time of the sale
on the real estate assigned by him, should be paid in full out
of the funds for distribution; (5) in considering the excep-
tions filed by Matthew B. Boyd. He was not a creditor and
had no interest in the distribution of the fund.

*John R. Miller* and *J. M. Weakley,* for appellant.—As
early as the case of Presbyterian Corporation v. Wallace, 3
Rawle, 126, this court decided that a judicial sale devested all
liens upon the property sold, basing the decision upon the
ruling of the English courts. To this rule, however, an ex-
ception was made in these words: "When, however, an encum-
brance cannot for any reason whatever be satisfied out of the
purchase money, it of course remains here as there . . . [in
England] a charge on the land."

Since that time the decisions have been uniform in sustain-
ing the exception, and have applied it to liens of every char-
acter—mortgages, judgments, legacies, title charges, dowers,
life estates and all manner of charges which could not be de-
termined as to amount or the person to whom they were
directly payable. See Knaub v. Esseck, 2 Watts, 283; Luce
v. Snively, 4 Watts, 397, 28 Am. Dec. 725; Reed v. Reed, 1
Watts & S. 239; Cowden's Estate, 1 Pa. St. 267; Dewalt's
Appeal, 20 Pa. 238; Dewart's Appeal, 43 Pa. 326; Swar's
Appeal, 1 Pa. St. 95; Fisher v. Kean, 1 Watts, 259.

These cases render it certain that in all judicial sales where
land sold is bound by a lien condtioned for the payment of an-
nual instalments for a given or indefinite period, or where the
cash value of the lien cannot be ascertained, or where the bene-
ficial owner of the fund charged cannot receive it, the lien re-
mains a charge in the hands of the vendor.

An act of assembly which would forbid the mortgagor or his
alienee to hold possession of this farm after the payment of
the amount due on the contract would be declared void, with-
out discussion. This is what is done by the distribution made

under the act of 1876. The lien creditors, whose rights stand for those of the mortgagor, are entitled to the proceeds of the sale, subject only to the deduction of the actual prior encumbrances. No enactment by direct words could impair this right. A construction which would prevent this and similar liens from being discharged under the general provision of the act of 1876 is required by the canons of construction and precedents which have always governed courts in construing statutes. Potter's Dwarr. Stat. 27; Vattel's Rules, p. 130, 7 Am. Rules, p. 144.

*S. Hepburn, Jr.,* and *M. C. Herman* for appellees.

PER CURIAM:

As the lien of the mortgage was not prior to all other liens except other mortgages, ground rents, and purchase money due the commonwealth, its lien was discharged upon confirmation of the assignee's sale. Nor can we discover any error in the distribution. As by the sale the mortgage was discharged, the money arising therefrom was properly awarded to the mortgagee, in trust for Margaret Bratton.

The appeal is dismissed and the decree affirmed, at costs of appellant.